# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50389

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2014

Lyle W. Cayce
Clerk

21st CENTURY FINANCIAL SERVICES, L.L.C.,

Plaintiff–Appellee,

versus

MANCHESTER FINANCIAL BANK,
Also Known as Manchester Financial Bank (In Organization),
Also Known as Manchester Financial Bank (Proposed),

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

An arbitration tribunal issued an award in favor of 21st Century Financial Services, L.L.C. ("21st Century"), and against Manchester Financial Bank. Seeking to vacate the award, the bank claims that 21st Century did not provide it with adequate notice of the arbitration proceedings and did not engage in good-faith negotiations before compelling arbitration. Because the bank had notice of the proceedings and 21st Century sufficiently engaged in

No. 13-50389

good-faith negotiations, we affirm the judgment confirming the arbitration award.

## I.

A group of bank organizers[1] sought to charter a bank to be called Manchester Financial Bank, N.A. In February 2008, Manchester Bank[2] entered into an "Agreement for Computer Processing Services" (the "Agreement") with 21st Century. The Agreement identified Mandelbaum as Manchester Bank's CEO, included an arbitration provision, and provided the bank's address as 7825 Fay Street, Suite 100, La Jolla, CA 92037 (the "La Jolla address").

In connection with the Agreement, Manchester Financial Group, L.P. ("MFG"), issued two checks to pay deposits to 21st Century for services to be provided to Manchester Bank. In spite of the bank's having received FDIC approval, Mandelbaum, on October 3, 2008, emailed 21st Century that the bank's principal investor had "decided not to move forward based on the current economic turmoil."

In response, Pat Jerge, president of 21st Century, forwarded two invoices to Mandelbaum for amounts due under the Agreement. Mandelbaum emailed Jerge back, agreeing to pay one invoice but disputing liability on the second.[3]

In spite of this email exchange, the parties did not resolve the amount

---

[1] Among others, the group included Douglas Manchester, Richard Gibbons, Frederick Mandelbaum, and Steven Strauss.

[2] The bank's name evolved from Manchester Financial Bank (proposed) to Manchester Financial Bank (in organization). Like the district court, we refer to it as Manchester Bank.

[3] Mandelbaum noted that Manchester Bank was "receptive" to paying one invoice plus an amount "for terminating the contract." He also instructed Jerge to offset from the deposit certain amounts the bank did not contest and to return the remaining balance to "Manchester Financial Group, L.P., ℅ Crystral Tidball, One Market Place, 33rd Floor, San Diego, CA 92101-7714" (the "San Diego address").

No. 13-50389

due under the Agreement.  Shortly thereafter, Timothy Nolan, counsel for 21st Century, sent a letter to Tidball at the San Diego address.  Michael Levinson, an attorney with the San Diego office of the Cooley Law Firm ("Cooley"), replied, copying Gibbons, another bank organizer, and contending that neither MFG nor Manchester Bank was liable for the disputed amounts.  Levinson closed his letter by requesting that 21st Century "promptly refund to the Bank" part of the initial deposit.

In light of these failed communications, 21st Century demanded arbitration, addressing the demand to Levinson at the San Diego address.  Strauss, a bank organizer and Levinson's partner, replied in a letter to Nolan[4] stating (1) that Cooley did not represent Manchester Bank and (2) that because the entity had never come into existence, no one represented the bank.  The AAA confirmed receipt of Straus's letter, gave notice to Levinson that it would conduct an arbitration, and asked Nolan to confirm the bank's address.  Nolan provided the AAA with the La Jolla and San Diego addresses and asked that communications be sent to both unless the bank directed otherwise.

Because correspondence the AAA had sent to the La Jolla address had been returned as undeliverable, Kathleen Cantrell, an AAA case manager, emailed Nolan in August 2009 requesting that he again confirm Manchester Bank's address.  Nolan responded by providing the San Diego address.

On September 8, 2009, the AAA sent a letter to the San Diego address, attaching an executed "Notice of Appointment" of an arbitrator that set the date for a preliminary hearing via conference call on September 14.  On September 10, Levinson responded (with copies to Strauss, Gibbons, and Nolan), referenced the September 8 letter, and stated no correspondence

---

[4] Strauss copied the letter to the American Arbitration Association ("AAA"), Levinson, and Gibbons.

3

should be sent to MFG.

On September 14 and 15, Nolan sent two letters to the AAA. The first asked that all notices be sent to Tidball at the San Diego address; the second asked that the service list be revised to serve Manchester Bank at the San Diego address in care of Douglas Manchester.

On September 28, the AAA sent notice of its revised list and confirmed that it had held a preliminary hearing but that no appearance had been made by or for Manchester Bank.[5] In response, Mari Waldron of MFG sent an email asking the AAA to substitute her and Gibbons for Tidball as service recipients. Nolan agreed but asked that Douglas Manchester be kept on the service list as well so he could receive service for the bank. On November 5, Summer Wynn, another attorney at Cooley, emailed the AAA with an attached letter from Strauss (also addressed to the AAA), that repeated his earlier position: "The Proposed Bank is merely a proposed entity that never came into existence, and to our knowledge, has not been properly served with Claimant's Demand."

As the arbitration date approached, Nolan and the AAA served Gibbons and Manchester Bank with various pleadings and notices.[6] According to 21st Century, during the six-month period before entry of the award, a bank organizer either received, sent, or was copied on notices or correspondence concerning the arbitration on at least fifteen occasions.

The arbitration was held on January 13, 2010. In spite of Manchester Bank's absence, the arbitration did not result in a default award; the tribunal required 21st Century to provide evidence in support of its claim. On February 2, the arbitration tribunal issued an award in favor of 21st Century for

---

[5] This notice was sent to Manchester Bank ℅ Manchester and MFG ℅ Tidball.

[6] These documents included 21st Century's exhibit list, its prehearing brief, and a reminder notice from the AAA.

No. 13-50389

$477,070.29 in damages, $44,274.00 in legal fees, $10,760.00 in arbitration costs, and any post-judgment interest.

21st Century sued in state court under the Federal Arbitration Act ("FAA") to confirm the award; Manchester Bank removed to federal court. After a bench trial on an agreed record and stipulated facts, the district court entered findings of fact and conclusions of law, granting 21st Century's motion to confirm the award and rejecting the bank's two theories opposing confirmation.

Manchester Bank repeats those theories on appeal. First, it maintains that 21st Century did not comply with the notice provision in the Agreement. Alternatively, it contends that the tribunal exceeded its powers because, before invoking arbitration, the parties had not attempted to negotiate in good faith with senior management as the Agreement required.

## II.

"Congress enacted the FAA to replace judicial indisposition to arbitration with a national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (alterations in original, citations and internal quotation marks omitted). In line with that policy, the FAA supplies "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Id.* at 582.

Appellate review of an order confirming an arbitration award proceeds *de novo*, using the same standards that apply to the district court. *See Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003). "We accept [a district court's] findings of fact that are not clearly erroneous . . . ." *Hughes Training Inc. v. Cook*, 254 F.3d 588, 592 (5th Cir. 2001). We limit review of arbitration awards to give deference to the decisions of the arbitrator. *Harris v. Parker Coll. of*

No. 13-50389

*Chiropractic*, 286 F.3d 790, 792 (5th Cir. 2002). "Judicial review of an arbitration award is extraordinarily narrow . . . ." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990). We

> may vacate an award only if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers.

*Harris*, 286 F.3d at 792 (citing 9 U.S.C. § 10(a) (2012)).

Parties may limit the scope of arbitration through contract. *See Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002). "Where arbitrators act contrary to express contractual provisions, they have exceeded their powers." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007) (citations and internal quotation marks omitted). "If the contract creates a plain limitation on the authority of an arbitrator, we will vacate an award that ignores the limitation." *Id.* "[L]imitations on an arbitrator's authority must be *plain and unambiguous* . . . ." *Id.* at 404 (emphasis added). "A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Brook*, 294 F.3d at 672. The party challenging the enforcement of the arbitration award has the burden of proof. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004).

## III.

Manchester Bank claims that because 21st Century did not send it notice of the arbitration proceedings via certified or registered mail to its La Jolla address, it did not comply with section 15.2 of the Agreement[7] and that that

---

[7] Section 15.2 of the Agreement provides:

deficiency is adequate ground to vacate the arbitration award.[8] The arbitration tribunal determined that the AAA and 21st Century had given adequate notice to the bank.[9] Acknowledging that the notice may have been technically deficient under the Agreement, the district court found that the bank had actual notice of the arbitration proceedings, so the court declined to vacate the award on that ground.[10]

This matter is controlled by *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726 (5th Cir. 1987), in which Bosarge argued that "the arbitration award

---

All notices, requests, and other communications required or permitted to be given or delivered hereunder to either Party must be in writing, and shall be personally delivered, sent, by certified or registered mail, postage prepaid and addressed, by overnight courier such as FedEx, by fax, or by email to such Party at the address shown on the first page of this Agreement, or at such other address as has been furnished by notice given in compliance with this Section. All notices, requests, and other communications shall be deemed to have been given upon delivery as evidenced by return receipt, courier records, fax confirmation, or confirming email.

[8] Manchester Bank gestures at two possible statutory grounds for vacatur stemming from deficient notice: (1) Under § 10(a)(1), "the award was procured by corruption, fraud, or undue means," or (2) under § 10(a)(4), "the arbitrators exceeded their powers." Because we conclude that the bank had actual notice of the arbitration proceedings, we do not need to determine whether insufficient notice constitutes a proper ground for vacatur.

[9] The tribunal explained as follows:

Claimant has brought this arbitration matter before the [AAA], and due notice was given of the case and the hearing date upon which the Arbitrator would hear the testimony of witnesses, receive evidence and arguments in support of and in defense of the claims made. There is evidence that the AAA and the Claimant attempted to further contact representatives of the Respondent of this arbitration matter and of the date and time of the hearing. Despite these communications and numerous notices and emails by the AAA and the Claimant over several months, neither the Respondent nor its representative appeared at the hearing on January 13, 2010 in Austin, Texas.

[10] *See 21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, No. A-10-CV-803-LY, slip op. at 10 (W.D. Tex. Mar. 22, 2013) ("After Nolan provided the AAA with the San Diego address, the AAA sent its letter notice to that address. Douglas Manchester later confirmed receipt of both demand letter and the notice through its communications with the AAA and 21st Century before the date of arbitration. Therefore, the court concludes that 21st Century and the AAA gave and Manchester Bank received actual notice of the arbitration proceedings.").

[was] unenforceable because he was not informed of the arbitration proceedings until after the hearing had been held, and the arbitrators had reached a final decision." *Id.* at 729. The district court determined that (1) Bernstein had provided notice under the terms of the partnership agreement and (2) Bosarge had actual notice of the proceedings.

On appeal, this court acknowledged that "'all parties in an arbitration proceeding are entitled to notice and an opportunity to be heard.'"[11] For vacatur of an arbitration award, however, the court required the absence of actual or constructive notice.[12] Regardless of whether Bernstein had complied with the partnership agreement, we enforced the award because the record contained "sufficient evidence to support the conclusion that Bosarge received actual or constructive notice of the arbitration hearing." *Id.*

Our sister courts similarly have refused to vacate arbitration awards for defective notice where the party had actual notice.[13] Manchester Bank has not

---

[11] *Bernstein*, 813 F.2d at 729 (quoting *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979)).

[12] *See id.* ("[D]ue process is not violated if the hearing proceeds in the absence of one of the parties when that party's absence is the result of his decision not to attend.").

[13] *See Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995) ("The Bormets contend that the arbitration award should be vacated because they did not receive proper notice of the arbitration proceedings. We have repeatedly held that 9 U.S.C. § 10(a) provides the exclusive grounds for setting aside an arbitration award under the FAA. Inadequate notice is not one of these grounds, and the Bormets' claim therefore fails." (citations omitted)); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 845 (2d Cir. 1977) ("Lecopulos argues that even if the agreement confers jurisdiction on courts in New York, proper service of a demand for arbitration is required to bring him within the power of the courts or arbitrators. The only notice Lecopulos received here was the motion to stay the court action pending arbitration, which was served on his attorneys. . . . Regardless of the precise legal status of Lecopulos's attorneys when they appeared in the district court, *no unfairness results from giving effect to the notice they actually received*." (emphasis added)); *see also Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 446 (S.D.N.Y. 2005) ("[I]n light of the strong policy favoring arbitration and undisputed proof that Smith had notice of the arbitration, the award will not be disturbed on the ground that a suite number was missing from a mailing address or that a notice was not sent by certified or registered mail."); *Marsillo v.*

identified any case in which a court vacated an award where a party did not receive notice per the terms of its contract but nevertheless had actual notice of the arbitration proceedings. The bank points only to *Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 208 (4th Cir. 2008). There, however, in upholding a vacatur, the court noted that the parties did not have actual or constructive notice of the arbitration.[14]

The district court did not clearly err in determining that Manchester Bank had actual or constructive notice of the arbitration. The record contains several communications showing that various bank organizers knew of the forthcoming proceedings.[15] Because the bank had actual or constructive notice and *Bernstein* requires no more, we do not need to decide whether 21st Century failed to comply with section 15.2 of the Agreement.

## IV.

Manchester Bank provides two related alternative assertions as to why we should vacate the arbitration award. First, because 21st Century did not attempt to negotiate in good faith with the bank's senior management before invoking arbitration and the Agreement required a second level of

---

*Geniton*, No. 03-2117, 2004 WL 1207925, at \*5–6 (S.D.N.Y. June 1, 2004) (confirming arbitration award where the party had actual notice of NASD arbitration proceedings and "his failure to make any inquiries" about other correspondence "suggest[s] that [he] simply chose to ignore the arbitration proceedings"); *Borop v. Toluca Pac. Sec. Corp.*, No. 97-4591, 1997 WL 790588, at \*2 n.7 (N.D. Ill. Dec. 17, 1997) ("Absent fraudulent or improper conduct, defective notice cannot justify an order vacating an arbitration award under Section 10 of the FAA.").

[14] *Choice Hotels*, 519 F.3d at 208 ("[T]he record is devoid of evidence to contradict the Franchisees' sworn assertions that they never received notice of the arbitration proceedings until after the AAA Arbitrator had issued the Arbitration Award.").

[15] Examples are the June 25, 2009, letter from Strauss to Nolan, which acknowledges the arbitration demand, and Manchester Bank's confirmed receipt of the September 29, 2009, demand letter from the AAA.

negotiations, the bank maintains that the arbitration tribunal exceeded its powers. Second, the bank contends that the district court clearly erred in finding that good-faith negotiations had occurred at the operational level.

The court rejected Manchester Bank's arguments, noting that § 11.1's "plain language [ ] neither requires senior management to negotiate nor conditions arbitration on such negotiations." The court also made the factual findings that (1) "negotiations at all levels were attempted and failed to succeed" and (2) "the dispute over liability under the Agreement was escalated to senior management as the e-mail correspondence from Manchester Bank's CO, Mandelbaum, to 21st Century president, Jerge, attests."

Sections 11.1, 11.2, and 15.1 speak to the parties' obligation to act in good faith in the event of a dispute. Section 11.1 provides,

> In the event of any claim, controversy, or dispute between [Manchester Bank] and [21st Century] . . . , the parties agree to negotiate in good faith toward resolution of the issues, and to escalate the dispute to senior management personnel in the event that the dispute cannot be resolved at the operational level. Disputes that cannot be resolved shall be submitted to binding arbitration under the following Section.

Section 11.2 states that "[i]f the parties cannot resolve any claim, controversy, or dispute through good faith negotiations, including any dispute regarding the validity, construction, or enforcement of this Agreement, either Party may demand that such matter be submitted to final and binding arbitration." Finally, § 15.1 notes that the parties agree to act in good faith.[16]

For us to vacate the arbitration award, Manchester Bank needs to show that the Agreement contained "express contractual provisions" that created a

---

[16] "Each Party agrees to perform its obligations as set forth in this Agreement in good faith and in a prompt and reasonable manner. All objections and complaints shall be made in good faith, and the parties agree to work together to resolve all issues and disputes within the framework and according to the terms of this Agreement."

"plain limitation on the authority of [the] arbitrator." *Apache Bohai*, 480 F.3d at 401 (internal citations and quotation marks omitted). The bank must establish that (1) the Agreement expressly conditioned arbitration on the failure of senior management negotiations and (2) no such senior management negotiations occurred.

The contract does not expressly require senior management to engage in negotiations. A plain reading of § 11.1 suggests that 21st Century was only required to engage in one round of negotiations at the operational level. We agree with the district court that § 11.1 does not plainly and unambiguously require negotiation by senior management.

Furthermore, even if senior management were required to engage in a second round of negotiations, the Agreement does not expressly condition the ability to arbitrate a dispute on failed *senior management* negotiations. Section 11.2 states that "[i]f the parties cannot resolve any claim[] through good faith negotiations," alluding to the negotiations that should take place in § 11.1, "either Party may demand that such matter be submitted to final and binding arbitration." Manchester Bank cannot show that the Agreement expressly conditioned arbitration on senior-management negotiations.

As for good-faith negotiations on the operational level, the record supports the district court's finding.[17] Jerge's email to Mandelbaum and Nolan's letter to Tidball, to which Levinson[18] responded, demonstrate that 21st

---

[17] *See 21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, No. A-10-CV-803-LY, slip op. at 11 (W.D. Tex. Mar. 22, 2013) ("The bank's demands for payment and refusal to negotiate continued through correspondence between attorney[s] of both parties . . . .").

[18] Manchester Bank maintains that because Levinson represented MFG and not the bank, he cannot have negotiated on its behalf. This reasoning misses the point. First, in light of Mandelbaum's instruction to return the bank's deposit to MFG ℅ Tidball, it is obvious that, by mailing to Tidball, 21st Century was attempting to continue negotiations with the bank. Second, in his letter to Nolan, Levinson made several legal arguments on behalf of the bank and again insisted 21st Century return money to it. Even if Levinson represented only

No. 13-50389

Century tried to negotiate in good faith with Manchester Bank. The bank has not demonstrated that the district court clearly erred in making this finding.

The judgment confirming the arbitration award is AFFIRMED.

---

MFG, 21st Century could have properly understood Levinson's letter as indicating that any further negotiations with the bank would have been futile.