ACCEPTED
03-17-00492-CV
21273618
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/13/2017 3:34 PM
JEFFREY D. KYLE
CLERK

No. 03-17-00492-CV

# In the Court of Appeals for the Third Judicial District Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/13/2017 3:34:07 PM
JEFFREY D. KYLE
Clerk

DIXIE EQUIPMENT, LLC AND DIXIE TURBINE SERVICES, LLC,
*Appellants*,

v.

ENERGIA DE RAMOS, S.A.P.I. DE C.V. F/K/A
DEACERO POWER S.A.P.I. DE C.V.,
*Appellee*.

On Appeal from the 200th Judicial District Court
Travis County, Texas

## BRIEF OF APPELLEE ENERGIA DE RAMOS, S.A.P.I. DE C.V. F/K/A DEACERO POWER S.A.P.I. DE C.V.

Breck Harrison
  State Bar No. 24007325
Michael Roberts
  State Bar No. 24082153
Danica L. Milios
  State Bar No. 00791261
JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas  78701
[Tel.] (512) 236-2000
[Fax] (512) 236-2002
*bharrison@jw.com*

COUNSEL FOR APPELLEE

ORAL ARGUMENT CONDITIONALLY REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

*Appellants*

Dixie Equipment, LLC and
Dixie Turbine Services, LLC

*Lead Appellate Counsel*

Kevin J. Terrazas
  State Bar No. 24060708
Timothy A. Cleveland
  State Bar No. 24055318
CLEVELAND | TERRAZAS PLLC
4611 Bee Cave Rd., # 306B
Austin, Texas  78746
[Tel.] (512) 680-3257
*kterrazas@clevelandterrazas.com*

*Appellee*

Energia de Ramos, S.A.P.I. de C.V. f/k/a
Deacero Power S.A.P.I. de C.V.

| *Lead Appellate Counsel* | *Additional Appellate Counsel* |
|---|---|
| Breck Harrison | Michael Roberts |
|   State Bar No. 24007325 |   State Bar No. 24082153 |
| JACKSON WALKER L.L.P. | Danica L. Milios |
| 100 Congress Ave., Suite 1100 |   State Bar No. 00791261 |
| Austin, Texas  78701 | JACKSON WALKER L.L.P. |
| [Tel.] (512) 236-2000 | 100 Congress Ave., Suite 1100 |
| [Fax] (512) 236-2002 | Austin, Texas  78701 |
| *bharrison@jw.com* | [Tel.] (512) 236-2000 |
| | [Fax] (512) 236-2002 |
| | *mroberts@jw.com* |
| | *dmilios@jw.com* |

## TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................ii

Table of Authorities...................................................................................v

Statement of the Case ...........................................................................viii

Statement Regarding Oral Argument ........................................................x

Issues Presented.......................................................................................x

Statement of Facts ...................................................................................3

    I.     The Ramos Arizpe Project......................................................3

    II.    The Arbitration Proceeding ...................................................4

    III.   The District Court Confirms the Arbitration Award .............8

Summary of Argument...............................................................................9

Argument.................................................................................................11

    I.     The Arbitration Panel's Decision To Hold the Final
        Arbitration Hearing in Dixie's Voluntary Absence and
        in Accordance with the Panel's Rules Did Not Violate
        Dixie's Purported Due Process or Constitute Misconduct
        under the FAA........................................................................14

        A.    The Arbitration Panel's Decision To Hold the Final
            Arbitration Hearing in Dixie's Absence Comported
            with Due Process Because Dixie Had Full Notice
            of the Hearing and Voluntarily Elected To
            Abandon the Proceedings.............................................16

        B.    The Arbitration Panel's Decision To Conduct the
            Hearing in Dixie's Absence Was Authorized by the
            Rules of the ICDR ......................................................20

iii

C.   It Was Dixie's Burden To Procure a Transcript of the Final Arbitration Hearing; Its Failure To Do so Does Not Support Vacatur of the Arbitration Award .........................................................................22

II.   The Arbitration Panel's Decision To Hold the Final Arbitration Hearing Despite Dixie's Claimed Inability To Pay Is Not Grounds for Vacatur .......................................28

A.   Dixie Failed To Prove Its Inability To Pay in the Arbitration Proceeding..............................................28

B.   The ICDR Procedures Specifically Authorized the Arbitration Panel To Reject Dixie's Counterclaims for Failure To Pay Its Share of the Arbitration Fees.............................................................................31

Prayer .................................................................................................32

Certificate of Service .........................................................................33

iv

Page(s)

Cases

*21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*,
   747 F.3d 331 (5th Cir. 2014) ........................................................ 17

*Baravati v. Josephthal, Lyon & Ross, Inc.*,
   28 F.3d 704 (7th Cir. 1994) ......................................................... 21

*BDO Seidman LLP v. J.A. Green Dev. Corp.*,
   327 S.W.3d 852 (Tex. App.—Dallas 2010, no pet.) ....................... 31

*Berstein Seawell & Kove v. Bosarge*,
   813 F.2d 726 (5th Cir. 1987) ................................................... 17, 18

*Bonded Builders Home Warranty Assoc., Inc. v. Smith*,
   488 S.W.3d 468 (Tex. App.—Dallas 2016, no pet) ........................ 30

*Craft v. Davis*,
   No. 2-07-332-CV, 2008 WL 4180357 (Tex. App.—Fort
   Worth Sept. 11, 2008, no pet.) (mem. op.) .................................... 23

*CVN Grp., Inc. v. Delgado*,
   95 S.W.3d 234 (Tex. 2002) ........................................................... 22

*Ewing v. Act Catastrophe-Tex. L.C.*,
   375 S.W.3d 545 (Tex. App.—Houston [14th Dist.]
   2012, pet. denied) ........................................................................ 18

*Gilbert v. Rain & Hail Ins.*,
   No. 02-16-00277-CV, 2017 WL 710702 (Tex. App.—Fort
   Worth Feb. 23, 2017, pet. denied) (mem. op.) ............................... 19

*GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*,
   126 S.W.3d 257 (Tex. App.—San Antonio 2003, pet. denied) .......... 23

*Grp. 32 Dev. & Eng'g, Inc. v. GC Barnes Grp.*,
No. 3:14-CV-2436-B, 2015 WL 144082
(N.D. Tex. Jan. 9, 2015) ....................................................... 18, 22

*House Grain Co. v. Obst*,
659 S.W.2d 903 (Tex. App.—Corpus Christi 1983,
writ ref'd n.r.e.).............................................................................23

*In re Chestnut Energy Partners, Inc.*,
300 S.W.3d 388 (Tex. App.—Dallas 2009, pet. denied)........... 12, 26

*In re Kempwood Assocs., L.P.*,
9 S.W.3d 125 (Tex. 1999) (orig. proceeding) (per curiam)................ 12

*In re Olshan Found. Repair Co.*,
328 S.W.3d 883 (Tex. 2010) (orig. proceeding) ............ 12, 21, 29, 31

*Jacaman Polaris Sports Ctr. Ltd. v. Falcon Int'l Bank*,
No. 04-16-00481-CV, 2017 WL 2852632 (Tex. App.—
San Antonio July 5, 2017, no pet.) (mem. op.)................... 12, 25, 26

*Kline v. O'Quinn*,
874 S.W.2d 776 (Tex. App.—Houston [14th Dist.] 1994,
writ denied) ..................................................................................23

*KNJ Enters., Inc. v. Wilbanks & Wilbanks, P.C.*,
No. 14-14-00271-CV, 2015 WL 1736400 (Tex. App.—
Houston [14th Dist.] Apr. 14, 2015, no pet.) (mem. op.).... 18, 19, 26

*Laws v. Morgan Stanley Dean Witter*,
452 F.3d 398 (5th Cir. 2006) ....................................................... 13

*Nafta Traders, Inc. v. Quinn*,
339 S.W.3d 84 (Tex. 2011)................................................23, 24, 27

*Peacock v. Wave Tec Pools, Inc.*,
107 S.W.3d 631 (Tex. App.—Waco 2003, no pet.).........................20

*Saks v. Rogers*,
No. 04-16-00286-CV, 2017 WL 3159712 (Tex. App.—
San Antonio July 26, 2017, no pet.) (mem. op.) ............................ 19

*Statewide Remodeling, Inc. v. Williams*,
244 S.W.3d 564 (Tex. App.—Dallas 2008, no pet.) .................. 23, 26

*Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*,
607 F.2d 649 (5th Cir. 1979) ................................................. 16, 17

*Venture Cotton Coop. v. Freeman*,
435 S.W.3d 222 (Tex. 2014)...........................................................29

*Venture Cotton Coop. v. Neudorf*,
No. 14-13-00808-CV, 2014 WL 4557765 (Tex. App.—
Houston [14th Dist.] Sept. 16, 2014, no pet.) (mem. op.) ........ 12, 19

*Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) .......................................................................20

*Vorwerk v. Williamson Cnty. Grain, Inc.*,
No. 03-10-00549-CV, 2012 WL 593481 (Tex. App.—
Austin Feb. 23, 2012, pet. denied) (mem. op.) ............. 11, 20, 23–25

## Codes and Rule

9 U.S.C. § 10(a)(3) ............................................................................13

9 U.S.C. § 10(c) .................................................................................12

TEX. R. APP. P. 38.1(i) ........................................................................31

## Other Authorities

International Dispute Resolution Procedures, Available at
https://www.icdr.org/icdr/ShowProperty?nodeId=/UCM/A
DRSTAGE2020868&revision=latestreleased
(last accessed December 12, 2017) ................................................22

## STATEMENT OF THE CASE

*Nature of the Case:*

Appellee Energia de Ramos, S.A.P.I. de C.V. f/k/a Deacero Power, S.A.P.I. de C.V. ("EdR") initiated arbitration proceedings against Appellants, Dixie Equipment, LLC ("Dixie Equipment") and Dixie Turbine Services, LLC ("Dixie Turbine") (collectively, "Dixie") pursuant to the parties' contracts. CR.12.[1] Dixie appeared and asserted counterclaims. CR.12; CR.202–20.

*Course of Proceedings:*

Seven months after EdR instituted the arbitration proceedings, Dixie informed the duly-appointed arbitration panel ("Arbitration Panel") that it was unable to pay its portion of the arbitration fees. CR.12–13. In response to the Arbitration Panel's order, Dixie filed a written statement in which it confirmed that it would not pay its portion of the arbitration fees, that its counsel's role would be "limited to that of an observer," and that it "[would] no longer be an active participant in the proceedings." CR.237. The Arbitration Panel held the final arbitration hearing. CR.14. EdR presented documentary evidence, as well as fact and expert witness testimony, in support of its claims against Dixie. *Id.* Dixie, through its counsel, attended the

---

1. Citations of CR.__ reference the clerk's record, with the blank identifying the page.

morning session of the first day of the two-day hearing, but did not return for the remainder of the proceedings. *Id.* The Arbitration Panel awarded EdR $16,664,184.60 including economic damages, attorneys' fees, expert fees, arbitration fees and expenses, and prejudgment interest. CR.11–34. EdR filed a Petition to Confirm Arbitration Award in the district court, which was granted. CR.246–73. This appeal followed. CR.365–66.

*Trial Court:*          200th District Court, Travis County; the Honorable Karin Crump, presiding.

*Trial Court Disposition:*          The district court confirmed the arbitration award. CR.246–73.

## STATEMENT REGARDING ORAL ARGUMENT

Because this case is controlled by the application of well-established legal principles, Appellee does not believe that oral argument is needed to aid in the Court's decisional process. However, if the Court concludes that it will hear oral argument in this matter, counsel for Appellee would like to be heard.

## ISSUES PRESENTED

1. Whether an arbitration panel's receipt of evidence following a party's voluntary absence from a final arbitration hearing, with actual knowledge of the hearing, due to alleged inability to pay constitutes arbitrator misbehavior under the Federal Arbitration Act sufficient to vacate the arbitration award.

2. Whether a party may complain on appeal regarding the lack of a transcript of a final arbitration hearing when the party neither requested one nor objected to the failure to record the proceedings before, during, or after the hearing.

3. Whether a party's voluntary waiver of its counterclaims due to an alleged inability to pay, a result mandated by the party's chosen arbitration rules, is a violation of the party's due-process rights.

No. 03-17-00492-CV

# In the Court of Appeals for the Third Judicial District Austin, Texas

DIXIE EQUIPMENT, LLC AND DIXIE TURBINE SERVICES, LLC,
*Appellant*,

v.

ENERGIA DE RAMOS, S.A.P.I. DE C.V. F/K/A
DEACERO POWER S.A.P.I. DE C.V.,
*Appellee.*

On Appeal from the 200th Judicial District Court
Travis County, Texas

## BRIEF OF APPELLEE ENERGIA DE RAMOS, S.A.P.I. DE C.V. F/K/A DEACERO POWER S.A.P.I. DE C.V.

TO THE HONORABLE THIRD COURT OF APPEALS:

The district court correctly confirmed the Arbitration Panel's award of damages in favor of EdR for Dixie's breach of contract. Dixie invites the Court to vacate that award because Dixie voluntarily abandoned the arbitration proceeding and did not participate in the final arbitration hearing, asserting an unsubstantiated inability to pay. According to Dixie, the Arbitration Panel violated its due-process rights by conducting

the final arbitration hearing in Dixie's absence without a transcript. Dixie also seeks to fault EdR for not securing a transcript of the final arbitration hearing.

At every turn, however, Texas law mandates confirmation of the Arbitration Panel's award. Dixie had actual knowledge of the proceedings and voluntarily chose to avoid them. The Arbitration Panel was authorized by the rules of the arbitral forum to proceed in Dixie's absence. And it was Dixie's sole responsibility to procure a record of the proceedings if it wanted to contest the result, not EdR's. Dixie received all the process to which it was entitled.

Moreover, Dixie cannot now be heard to complain about the cost of arbitration. Dixie has never claimed that the arbitration agreements were unconscionable due to excessive costs, and it failed to offer any evidence to that effect before the Arbitration Panel. Dixie's voluntary decision to abandon the arbitration proceeding, citing an unproven inability to pay, does not create a due-process violation. The Court should affirm the district court's judgment confirming the arbitration award.

EdR is an affiliate of Deacero, S.A.P.I. de C.V., a steel manufacturer located in Mexico. *See* CR.14. This case arises out of two contracts executed in December 2012 and April 2013: (1) the Equipment Purchase Agreement ("EPA") between Dixie Equipment and EdR; and (2) the Engineering Project Management and Centerline Installation Contract ("Installation Contract") between Dixie Turbine Services and EdR. *See* CR.42–82 (EPA); CR.83–170 (Installation Contract). Both the EPA and the Installation Contract contained arbitration provisions. CR. 51–52 (EPA arbitration provision); CR.115 (Installation Contract arbitration provision).

## I. THE RAMOS ARIZPE PROJECT

Pursuant to the EPA and the Installation Contract, Dixie agreed to disassemble, refurbish, transport, and install a turbine generator and related components for a power generation facility in Ramos Arizpe, Nuevo León, Mexico to serve EdR's manufacturing plants and other facilities' electric power needs ("Project"). CR.14–15.[2] EdR planned on

---

2. Record cites to CR.11–34 come from the Arbitration Award (defined herein) issued by the Arbitration Panel. The Arbitration Award was issued following the Arbitration Panel's receipt of pre- and post-hearing briefing, documentary evidence,

selling any excess power it did not need to Mexico's state-run electric power provider and other third parties. CR.14.

Following Dixie's delays and deficient performance throughout the Project, and after EdR paid it $24,266,213.90, over a million dollars more than the price agreed-upon in the EPA and Installation Contract, Dixie abandoned the Project on September 10, 2014. CR.15–16. Dixie's premature abandonment of the incomplete Project required EdR to hire a number of contractors to correct and complete Dixie's scope of work under both the EPA and Installation Contracts. CR.16.

## II. THE ARBITRATION PROCEEDING

Seeking to recoup the amounts paid to other contractors to correct and complete Dixie's scope of work, as well as lost profits associated with lost sales of power occasioned by the Project's delayed completion, EdR filed its Notice of Arbitration in September 2015. CR 12. In October 2015, Dixie filed its Original Answer and Counterclaim. *Id.* Following the parties' selection of the Arbitration Panel, the parties agreed that the arbitration would be conducted in accordance with the procedures of the

---

expert and fact witness testimony, Dixie's Original Answer, and EdR's counsel's responses to the Arbitration Panel's inquires during the final arbitration hearing.

International Center for Dispute Resolution's ("ICDR") International Dispute Resolution Procedures ("ICDR Procedures") and agreed on a scheduling order to govern Case Number 01–15–0004–9165 ("Arbitration Proceeding"). CR.12; CR.35–39 (February 17, 2016 Report of Preparatory Conference and Scheduling Order ("Initial Scheduling Order")). Dixie was initially an active participant in the Arbitration Proceeding. For example, pursuant to the Initial Scheduling Order, Dixie agreed to a procedural schedule which provided for the exchange of discovery, expert designation deadlines, a discovery deadline, and the exchange of pretrial materials. CR.35–39. Further, Dixie agreed to a final arbitration hearing beginning September 12, 2016, in Austin, Texas. CR.37.

On April 8, 2016, Dixie's then-counsel informed the Arbitration Panel and EdR that it would not pay its portion of the arbitration fees for unexplained financial reasons. CR.13. Following this representation, EdR still complied with its obligations under the Initial Scheduling Order, serving Dixie with its document production and a Statement of Persons with Knowledge of Relevant Facts. The Arbitration Panel held a status conference on June 3, 2016, concerning the status of the Arbitration Proceeding in light of Dixie's representation that it would not

pay its share of the arbitration fees. *Id.* During this conference, the Arbitration Panel required Dixie to provide a written status report to the Panel and EdR. *Id.*

On June 13, 2016, in response to the Arbitration Panel's order for a written status report, Dixie stated that it was "financially unable to continue to defend" against the claims in the Arbitration Proceeding. CR.237. Further, Dixie stated that its attorney would "remain as counsel for Dixie, but [his] role [would] be limited to that of an observer [and] Dixie [would] no longer be an active participant in the proceedings." *Id.* Dixie requested that the Arbitration Panel "take judicial notice of its pleadings and give due consideration to the contractual limitations on damages agreed to under the contracts." *Id.*

Following Dixie's representation, and EdR's June 13, 2016 request to continue to the final arbitration hearing, the Arbitration Panel confirmed that the final arbitration hearing would take place in Austin, Texas beginning on September 12, 2016, as provided in the previously agreed-upon Initial Scheduling Order. *See* CR.13; CR.37. The Panel noted that Dixie's counsel would not put on evidence, but would appear at the hearing in an observer role. CR.13. Subsequently, Dixie informed

the Arbitration Panel that Dixie would not be pursuing its counterclaims because it could not pay the "tribunal fees required to advance these claims." *Id*.

On August 8, 2016, the Arbitration Panel held its final status conference confirming preparations and deadlines for the final arbitration hearing. *Id*. Counsel for EdR and Dixie participated in this status conference. *Id*. Prior to the final arbitration hearing, EdR served its Hearing Exhibit List, Pre-Hearing Brief, and Timeline and Witness List on the Arbitration Panel and Dixie. CR.13–14.

On September 12 and 13, 2016, the Arbitration Panel held the final arbitration hearing in Austin, Texas. EdR presented documentary and testimonial evidence in support of its claims, calling four live witnesses, including two expert witnesses, who were questioned by the Arbitration Panel. CR.14. The Arbitration Panel additionally questioned EdR's counsel. *Id*. Dixie's counsel attended the hearing the morning of September 12, but did not return for the remainder of the hearing. *Id*. Following the hearing, the Arbitration Panel requested EdR brief discrete issues, which it did, serving Dixie with a copy of its post-hearing briefing. *Id*. Despite attending part of the hearing and being copied on

all pre- and post-hearing correspondence and pleadings, Dixie did not request a transcript of the final arbitration hearing or object to the absence of a transcript.

On November 22, 2016, the Arbitration Panel issued its Final Award in the form of an 18-page reasoned award ("Arbitration Award"). CR.11–34; CR.195–97. In issuing its rulings, the Arbitration Panel referenced and analyzed five specific issues and specifically relied on "EdR's pleadings, Dixie's Original Answer, the evidence presented at the Final Arbitration Hearing, and post-hearing briefing." CR.17. The Arbitration Panel ultimately awarded EdR $13,627,162.30 against Dixie Equipment and $3,037,022.34 against Dixie Turbine. CR.27.

III. THE DISTRICT COURT CONFIRMS THE ARBITRATION AWARD

EdR promptly filed its Petition to Confirm Arbitration Award in Travis County state court on November 30, 2016. CR.3–171. Exactly three months following the Arbitration Panel's issuance of the award, Dixie's non-attorney owner, Claude Hendrickson, filed an "Answer to Petition to Confirm Arbitration Award" on behalf of Dixie. CR.174–81. On April 13, 2017, Dixie filed a pleading entitled "Additional Briefing Related to Motion to Vacate[,]" asserting substantially the same

8

arguments raised before this Court, and EdR filed a response the following day. CR.230–44.

The district court denied Dixie's purported Motion to Vacate on April 18, 2017. On April 19, 2017, the district court granted EdR's Petition to Confirm Arbitration Award and confirmed the Arbitration Award in its entirety, with post-award interest. CR.246–73. Dixie filed a Motion for New Trial and Motion to Modify the Judgment, again raising substantially the same arguments it raises before this Court. CR.333–42. Both motions were overruled by operation of law, and this appeal followed. CR.365–66.

SUMMARY OF ARGUMENT

The district court confirmed the Arbitration Award, issued after the Arbitration Panel received and considered pre- and post-hearing briefing, testimonial and documentary evidence, and Dixie's Original Answer. Dixie argues the Arbitration Award should have been vacated because: (1) it was "unable to participate" in the final arbitration hearing; (2) EdR did not request a record of the final arbitration hearing on Dixie's behalf, and; (3) Dixie could not "present its counterclaims[.]" Dixie claims that these purported failures of the Arbitration Panel and EdR violated its

9

due-process rights and support vacatur of the Arbitration Award. Because Dixie's contentions are foreclosed by Texas law, the Court should reject them.

To reverse the district court's judgment, Dixie would have this Court ignore the presumption in favor of arbitration awards and sanction the strategy of partially participating in a previously agreed-upon arbitration proceeding, voluntarily withdrawing from the proceeding, and re-appearing only after the fact to contest the results of the proceeding from which it withdrew. Sanctioning Dixie's strategy would not serve due process, fairness, or common sense.

Texas law has long held that arbitration awards may be set aside in only the most egregious of circumstances, none of which are presented here. Dixie had full notice—indeed it had actual knowledge—of the final arbitration hearing, and it voluntarily opted not to participate. Dixie had every opportunity to request a record be made of the final arbitration hearing, but it failed to do so. Finally, Dixie made no attempt to prove the purportedly excessive cost of the Arbitration Proceeding, to which it voluntarily agreed. Dixie cannot establish error in the Arbitration

10

Panel's actions and decision at all, much less such error that would support vacatur under Texas law.

The Court should affirm the district court's judgment confirming the Arbitration Award.

As this Court and the Texas Supreme Court have repeatedly recognized, "Texas law has long favored arbitration of disputes." *Vorwerk v. Williamson Cnty. Grain, Inc.*, No. 03-10-00549-CV, 2012 WL 593481, at *4 (Tex. App.—Austin Feb. 23, 2012, pet. denied) (mem. op.) (citing *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding) (per curiam)). Arbitration awards are conclusive as to all matters submitted to the arbitrators because the award has the effect of a judgment of a court of last resort. *Id.*

Accordingly, judicial review of arbitration awards "is extraordinarily narrow," and courts "indulge every reasonable presumption in favor of upholding the arbitration award." *Id.* (citing *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010); *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)). An arbitration award must be confirmed unless it is vacated, modified, or

11

corrected pursuant to one of the limited—and exclusive—grounds set forth in the Federal Arbitration Act (FAA).[3] *Venture Cotton Coop. v. Neudorf,* No. 14-13-00808-CV, 2014 WL 4557765, at \*3 (Tex. App.—Houston [14th Dist.] Sept. 16, 2014, no pet.) (mem. op.) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding that the bases for vacatur under the FAA are exclusive)).

Dixie urges the Court to vacate the arbitration award for "misconduct" under section 10 of the FAA.[4] That provision authorizes vacatur in limited circumstances, including

---

3. The parties agreed the Arbitration Proceeding "would be governed in all aspects by Texas law." CR.12. Accordingly, both the FAA and TAA may apply. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 890 (Tex. 2010) (orig. proceeding); *In re Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127–28 (Tex. 1999) (orig. proceeding) (per curiam). Because Dixie raises vacatur grounds only pursuant to the FAA, EdR focuses its brief on the FAA.

4. Dixie actually cites 9 U.S.C. § 10(c) as the asserted statutory basis for vacatur of the arbitral panel's award for alleged misconduct. Appellants' Br. at 7–8. Section 10(c), however, does not concern misconduct, but states that "The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5." 9 U.S.C. § 10(c). The only portion of 9 U.S.C. section 10 that concerns "misconduct" is 9 U.S.C. section 10(a)(3). Because the substance of Dixie's argument on appeal concerns "misconduct," EdR assumes Dixie seeks vacatur under that provision. *See* Appellants' Br. at 7–8; *see also In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397-98 (Tex. App.—Dallas 2009, pet. denied) (noting that section 10(a) sets forth the limited situations in which a court may vacate an arbitration award); *Jacaman Polaris Sports Ctr. Ltd. v. Falcon*

12

> where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

9 U.S.C. § 10(a)(3); *see* Appellants' Br. at 7–8. "Misconduct" authorizing vacatur of an award is not an error in the arbitrator's determination or an error of law, but is conduct that "so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006).

Dixie cannot demonstrate any misconduct by the Arbitration Panel—let alone such conduct that deprived Dixie of an opportunity for a fair hearing. Dixie had full notice and the opportunity to be heard in the Arbitration Proceeding. It voluntarily abandoned the Arbitration Proceeding claiming an alleged and unproven inability to pay its portion of the arbitration fee. The district court properly granted EdR's Petition to Confirm Arbitration Award. This Court should affirm.

---

*Int'l Bank*, No. 04-16-00481-CV, 2017 WL 2852632, at *3 (Tex. App.—San Antonio July 5, 2017, no pet.) (mem. op.) (same).

13

I. THE ARBITRATION PANEL'S DECISION TO HOLD THE FINAL ARBITRATION HEARING IN DIXIE'S VOLUNTARY ABSENCE AND IN ACCORDANCE WITH THE PANEL'S RULES DID NOT VIOLATE DIXIE'S PURPORTED DUE PROCESS OR CONSTITUTE MISCONDUCT UNDER THE FAA.

Dixie admits that it was fully aware of the Arbitration Proceeding pending in the ICDR that was set to resolve the competing breach-of-contract claims asserted by Dixie and EdR. Appellants' Br. at 3. It further admits that it voluntarily abandoned the proceedings due to alleged financial issues. *Id.* Dixie nonetheless contends that the Arbitration Panel engaged in misconduct and violated its due-process rights by conducting the final arbitration hearing in Dixie's absence without making a record. *Id.* at 5–14. Dixie attempts to analogize to the post-answer-default rule that, in the absence of a reporter's record, a defaulting party is entitled to remand for a new trial. *Id.* at 8–13 (citing *Smith v. Smith*, 544 S.W.2d 121, 122 (Tex. 1976)). Claiming that there are no "reported case[s] addressing this issue in the arbitration context," *id.* at 8, Dixie invites the Court to craft a new rule that would give a party an automatic rehearing before an arbitration panel when the party, after notice of the proceedings, and even partial participation, voluntarily abandons the proceedings and a record is not made. *Id.* at 8–13.

14

For multiple reasons, the Court should reject Dixie's invitation. First, Dixie had full notice, indeed it had actual knowledge, of the Arbitration Proceeding, including the final arbitration hearing, and it voluntarily abandoned it. CR.13–14; CR.237. Several cases—reported and unreported—have rejected the notion that an arbitral decision may be upended on due-process or "misconduct" grounds by a party's failure to appear after notice—with or without a transcript of the proceedings. Second, courts repeatedly hold that parties to arbitration will be held to the rules to which they contractually obligated themselves. When, as here, arbitration rules specifically authorize the arbitral panel to proceed in the absence of a party who had notice, the absent party has no grounds to complain about the conduct of the hearing. Third, the burden to procure a transcript of the final arbitration hearing lay squarely with Dixie, both under the rules of the ICDR and under well-established Texas jurisprudence. Dixie's voluntary abdication of its responsibility to make its own record does not establish misconduct or a violation of due process by the panel.

None of the grounds asserted by Dixie constitutes misconduct to support vacatur of the Arbitration Panel's decision under the FAA. The district court's decision to confirm the Arbitration Award was correct.

A. **The Arbitration Panel's Decision To Hold the Final Arbitration Hearing in Dixie's Absence Comported with Due Process Because Dixie Had Full Notice of the Hearing and Voluntarily Elected To Abandon the Proceedings.**

Dixie erroneously contends that the Arbitration Panel's "ex parte receipt of evidence constitutes misbehavior by the arbitrators prejudicial to Dixie's rights in violation of 9 U.S.C. § 10(c)[sic]." Appellants' Br. at 8. In other words, Dixie contends that a final arbitration hearing in which one party presents evidence while another does not, in general, violates the FAA. *Id.* As support for this erroneous statement of the law, Dixie cites *Totem Marine Tug and Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 653 (5th Cir. 1979), for the principle that "arbitrators cannot conduct *ex parte* hearings or receive evidence except in the presence of each other and of the parties, unless otherwise stipulated." Appellants' Br. at 8. Dixie's assertion misstates both the law of the Fifth Circuit, as expressed by *Totem Marine* and later cases, as well as Texas jurisprudence, which universally authorizes ex parte hearings, provided the absent party received notice.

16

To begin, there is no blanket rule prohibiting ex parte arbitration hearings.[5] To the contrary, "[w]hile all parties in an arbitration proceeding are entitled to notice and an opportunity to be heard, due process is not violated if the hearing proceeds in the absence of one of the parties when that party's absence is the result of his decision not to attend." *Berstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 729 (5th Cir. 1987) (quoting *Totem Marine*, 607 F.2d at 651) (other citations omitted). To support vacatur of an award based on an ex parte hearing, a party must show "the absence of actual or constructive notice." *21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 337 (5th Cir. 2014) (citing *Bernstein*, 813 F.3d at 729). "Where there is sufficient evidence showing

---

5. Dixie elides the holding of *Totem Marine* to suggest that it generally prohibits ex parte arbitration hearings. The case makes no such general proclamation. The very quote offered by Dixie for its purported general rule against ex parte hearings qualifies the rule with the limitation, "unless otherwise stipulated." 607 F.2d at 653. *Totem Marine* specifically notes that the arbitration rules governing the parties before the court required that "all evidence shall be taken in the presence of all the parties, *except where any of the parties is absent in default or has waived his right to be present*." 607 F.2d at 652 (emphasis added). Like the forum rules in *Totem Marine*, the governing rules in this matter expressly authorized the Arbitration Panel to conduct a hearing in the absence of a party, if the party failed to appear after being duly notified. ICDR art. 26; *see infra* § I.B. Thus *Totem Marine* supports the panel's choice to conduct its hearing in Dixie's absence: Dixie had actual knowledge of the final arbitration hearing and elected not to participate, with the exception of its counsel attending part of the first day of the hearing. The rules of the forum "otherwise stipulated" that the Arbitration Panel was authorized to conduct its hearing without Dixie.

17

that a party has received actual or constructive notice of the arbitration hearing, the award will be enforced." *Grp. 32 Dev. & Eng'g, Inc. v. GC Barnes Grp.*, No. 3:14-CV-2436-B, 2015 WL 144082, at *4 (N.D. Tex. Jan. 9, 2015) (citing *21st Fin. Servs., L.L.C.*, 747 F.3d at 337).

Texas state courts have come to the same conclusion. In *Ewing v. Act Catastrophe-Texas L.C.*, 375 S.W.3d 545, 551–52 (Tex. App.— Houston [14th Dist.] 2012, pet. denied), the Fourteenth Court of Appeals considered Ewing's due-process challenge (nearly identical to that asserted by Dixie) to an arbitration award issued after a hearing about which she had notice, but elected not to attend. Citing the Fifth Circuit's decision in *Berstein*, the court held that due process does not mandate that parties be heard at an arbitration proceeding. Due process requires only that parties be given a meaningful opportunity to be heard. *Id.* (citing *Berstein*, 813 F.2d at 729). The court rejected Ewing's due-process challenge, pointedly concluding "[i]f a party's absence at the arbitration hearing is the result of her decision not to attend, there is no due process violation." *Id.*

The Fourteenth Court reached a similar result in *KNJ Enterprises, Inc. v. Wilbanks & Wilbanks, P.C.*, No. 14-14-00271-CV, 2015 WL

18

1736400 (Tex. App.—Houston [14th Dist.] Apr. 14, 2015, no pet.) (mem. op.). There, the court considered KNJ's assertion that, even though it received notice of the arbitration proceedings, its absence prevented the arbitrator from resolving its claims. *Id.* at *5. The court rejected KNJ's argument, noting that KNJ "could not prevent consideration of claims sent to arbitration by opting not to participate in an arbitration proceeding of which it had notice." *See also Neudorf,* 2014 WL 4557765, at *5–6 (rejecting due-process challenge to arbitral panel's decision to conduct an ex parte hearing when the objecting party intentionally avoided service of the arbitration complaint and notice of hearing).

Other Texas courts have likewise rejected attempts to vacate arbitration awards and decisions based on one party's intentional absence from the proceedings. *See Saks v. Rogers,* No. 04-16-00286-CV, 2017 WL 3159712, at *9 (Tex. App.—San Antonio July 26, 2017, no pet.) (mem. op.) (noting that "[d]ue process is satisfied when notice procedures are followed in compliance with the rules under which the parties agreed to be bound"); *Gilbert v. Rain & Hail Ins.,* No. 02-16-00277-CV, 2017 WL 710702, at *4 (Tex. App.—Fort Worth Feb. 23, 2017, pet. denied) (mem. op.) (refusing to vacate arbitration decision for alleged misconduct when

arbitrator conducted hearing in the absence of a party who had notice and was given the "opportunity to participate in the proceedings but explicitly chose not to."); *cf. Vorwerk*, 2012 WL 593481, at *5 ("Courts have held that neither an arbitrator's receipt of ex parte affidavits or ex parte documents nor an arbitrator's ex parte telephone call to a party's counsel constitute arbitrator misconduct."); *Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 640 (Tex. App.—Waco 2003, no pet.) (same).

Simply put, no due-process violation arises from an arbitration panel's decision to conduct an arbitration hearing in a party's voluntary absence after notice is provided. The Arbitration Panel's decision to proceed was not misconduct at all, much less misconduct rising to the level necessary to void the award under the FAA.

B.    The Arbitration Panel's Decision To Conduct the Hearing in Dixie's Absence Was Authorized by the Rules of the ICDR.

It is axiomatic that arbitration is "a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). To that end, the United States Supreme Court has recognized that parties may "specify by contract the rules under which [their] arbitration will be conducted." *Id.* As Judge

20

Posner has stated in more colorful terms: "[S]hort of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, . . . parties are as free to specify idiosyncratic terms of arbitration as they are to specify any other terms in their contract." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 709 (7th Cir. 1994). These agreements are strictly enforced in Texas. "Courts treat arbitration agreements as other contracts in applying the legal rules to interpret them. The goal is to discern the true intentions of the parties, as the FAA's primary purpose is to ensure private agreements to arbitrate are enforced according to their terms, no more, no less." *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 889 (Tex. 2010) (orig. proceeding).

Here, the parties voluntarily agreed to be governed by the ICDR Procedures that would both bind them and authorize action by the Arbitration Panel in the event of a party's absence from the proceedings. *See* CR.12 (the Arbitration Award noting that "[t]he parties further agreed that . . . [the Arbitration Proceeding] would be governed by the ICDR Procedures."). In particular, Article 26 of the ICDR Procedures governs default. In relevant part, Article 26 states:

> . . .

2. If a party, duly notified under these Rules, fails to appear at a hearing without showing sufficient cause of such failure, the tribunal may proceed with the hearing.

3. If a party, duly invited to produce evidence or take any other steps in the proceedings, fails to do so within the time established by the tribunal without showing sufficient cause for such failure, the tribunal may make the award on the evidence before it.

ICDR art. 26.2, .3.[6] Under the plain text of the ICDR Procedures, the Arbitration Panel was specifically authorized to proceed with the final hearing and take evidence in Dixie's voluntary absence. *See Grp. 32 Dev. & Eng., Inc.*, 2015 WL 144082, at *6 (rejecting attempt to vacate award issued after an ex parte hearing because the governing rules permitted the hearing: "Furthermore, the Court finds no reason why the award should be vacated based on the arbitrator's decision to proceed *ex parte* . . . as [the governing rule] permits such a practice.").

C. **It Was Dixie's Burden To Procure a Transcript of the Final Arbitration Hearing; Its Failure To Do so Does Not Support Vacatur of the Arbitration Award.**

Just as courts strictly enforce agreements to arbitrate, they strictly enforce arbitration awards, and hold objecting parties to a high burden

---

6. *See* International Dispute Resolution Procedures, Available at https://www.icdr.org/icdr/ShowProperty?nodeId=/UCM/ADRSTAGE2020868&revision=latestreleased (last accessed December 12, 2017).

of proof. Texas courts, including this Court, unanimously hold that "[w]hen a party seeks to modify or vacate an arbitration award, it has the burden of bringing forth a complete record and establishing any basis that would warrant vacating the award." *Vorwerk*, 2012 WL 593481, at *5; *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101–02 (Tex. 2011) (noting that, if error cannot be demonstrated in the record, an arbitration award must be presumed correct); *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 569-70 (Tex. App.—Dallas 2008, no pet.); *Craft v. Davis*, No. 2-07-332-CV, 2008 WL 4180357, at *2 & n.11 (Tex. App.—Fort Worth Sept. 11, 2008, no pet.) (mem. op.); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex. App.—San Antonio 2003, pet. denied); *Kline v. O'Quinn*, 874 S.W.2d 776, 783 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *House Grain Co. v. Obst*, 659 S.W.2d 903, 906 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.).

Bringing forth a complete record from an arbitration proceeding is just as critical as bringing forth a complete record from a judicial proceeding, even though arbitration proceedings are traditionally designed to have *fewer* procedural rules. *Nafta Traders*, 339 S.W.3d at 101-02 (noting that arbitration proceedings "are often informal;

23

procedural rules are relaxed, rules of evidence are not followed, and no record is made."). Regardless, when parties seek judicial review of arbitration proceedings, "the only review to which they can agree is the kind of review courts conduct. If error cannot be demonstrated, an award must be presumed correct." *Id.*

Dixie's attempt to carve out an exception to this rule for parties who intentionally and voluntarily avoid arbitration hearings has no support in Texas law. As the Court implicitly acknowledged in *Vorwerk*, an objecting party is required to procure a full record of the proceedings in order to vacate an award, even when the party is voluntarily absent from the proceedings. 2012 WL 593481, at *5–6. In *Vorwerk*, the Court rejected an attempt to vacate an arbitration award based on ex parte communications *because* the objecting party failed to procure a record. *Id.* at *6. Like Dixie, Vorwerk, had answered and voluntarily participated in arbitration proceedings before he failed to appear at a hearing. *Id.* at *1. Subsequent to the hearing, the president of the arbitration organization engaged in additional ex parte fax communications with Vorwerk's opposing party. *Id.* at *1–2. When the arbitration panel later issued an award against Vorwerk, he sought to

24

vacate the award, claiming misconduct based on the ex parte communications. *Id.* at *5.

Even though Vorwerk, like Dixie, was absent from the hearing, the Court enforced the strict rule that Dixie seeks to avoid here: As the objecting party, Vorwerk was obligated to procure a record of the arbitration proceedings—notwithstanding his absence. *Id.* at *6. Without a record, the Court could not "conclusively determine the basis for the arbitrator's award, whether new information was conveyed to the panel in the fax, and if it was, whether it deprived Vorwerk of a fair hearing." Accordingly, the Court rejected Vorwerk's attempt to vacate the arbitration award because he failed to procure a record. *Id.*

Similarly, in *Jacaman Polaris Sports Center Ltd. v. Falcon International Bank*, No. 04-16-00481-CV, 2017 WL 2852632, at *3 (Tex. App.—San Antonio July 5, 2017, no pet.) (mem. op.), the San Antonio Court rejected a party's argument that an arbitration award should be vacated on misconduct grounds because the arbitration panel failed to make a record of its hearing in the absence of the objecting party. In *Jacaman*, the arbitration panel provided the parties notice of a scheduled

25

hearing, which Jacaman did not attend. *Id.* at *1.[7] Subsequently, the panel issued its award, adverse to Jacaman. *Id.* Jacaman challenged the award claiming FAA misconduct for the panel's failure to record the hearing at issue. *Id.* at 2–3. Citing both the rule of the arbitral forum, which provided all parties the right to request a record, as well as the standard Texas rule that the objecting party had the burden to procure a record of the arbitration proceedings, the court rejected Jacaman's challenge. *Id.* at *3 (citing Commercial Arbitration Rules of the Am. Arbitration Assoc. R-28; *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 388, 400 (Tex. App.—Dallas 2009, pet. denied); *Statewide Remodeling*, 244 S.W.3d at 568; *see also KNJ Enter.*, 2015 WL 1736400, at *4–5 (rejecting party's attempt to vacate an arbitration award because the party failed to procure a complete record of the proceedings, even though party was absent from the proceedings).

Dixie, like Vorwerk and Jacaman, had full notice and actual knowledge of the Arbitration Proceeding, including the final arbitration

---

7. The court's decision does not make clear that Jacaman did not attend the hearing, or that a hearing even occurred. However, the Brief of Appellee, Falcon Bank, at 6-7, discusses these facts, providing record cites. *See* http://www.search.txcourts.gov/ SearchMedia.aspx?MediaVersionID=6caac296-93f2-4ca2-a1f5-dc7528f8a302&coa=c oa04&DT=Brief&MediaID=bfe0e3e7-cd51-42d1-9365-edb1789ddc83 (last accessed December 12, 2017).

hearing. CR.13–14; CR.35–39 (Initial Scheduling Order noting final arbitration hearing would begin September 12, 2016). The Initial Scheduling Order, to which Dixie agreed in February 2016, scheduled the final arbitration hearing to begin September 12, 2016. CR. 37. Dixie, through its counsel, even attended part of the final arbitration hearing. CR.14. Dixie was well aware that the Arbitration Panel would receive evidence at the final arbitration hearing. CR.13. Nothing prevented Dixie from requesting that a transcript be made of the final arbitration hearing, and the record reflects no objection in the Arbitration Proceeding to the Arbitration Panel and EdR's intention to not procure a transcript. Having failed in its obligation to make its record for appeal, Dixie cannot shift the burden to EdR to manufacture its due-process claim. *Nafta Traders*, 339 S.W.3d at 101–02.

Dixie's proposed new rule, obligating arbitration panels and opposing parties to secure a transcript when one party voluntarily abandons an arbitration hearing after notice and prior participation in the arbitration proceeding, has been effectively rejected by every court to have considered it, including this Court. The district court properly

rejected Dixie's challenge to the Arbitration Award. The Court should affirm.

## II. THE ARBITRATION PANEL'S DECISION TO HOLD THE FINAL ARBITRATION HEARING DESPITE DIXIE'S CLAIMED INABILITY TO PAY IS NOT GROUNDS FOR VACATUR.

The Court should reject Dixie's contention that its due-process rights were violated because it was "prevented from bringing its claims due to lack of funds." Appellants' Br. at 14. Dixie waived its complaint in the first instance by not offering any proof in the arbitral forum of the likelihood of incurring excessive costs. Even if the Court considers Dixie's inability-to-pay claim, however, it should still affirm the district court's judgment because Dixie agreed to forfeit its counterclaims in arbitration for failure to pay its required deposit. Because Dixie failed to offer any proof of its financial circumstances, but agreed in any event to the consequences of its decision to not pay, the district court correctly confirmed the Arbitration Award.

### A. Dixie Failed To Prove Its Inability To Pay in the Arbitration Proceeding.

Dixie contends that its due-process rights were violated because it was "barred from bringing its claims in arbitration" due to its alleged inability to pay. *Id.* at 15. While Texas law recognizes the possibility

28

that an arbitration agreement may be held substantively unconscionable due to excessively high costs, a party seeking to avoid arbitration on such grounds bears the burden of proving that arbitration would be prohibitively expensive. *Olshan*, 328 S.W.3d at 893. "[P]arties must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id.* at 895. "Evidence that merely speculates about the risk of possible cost is insufficient." *Id.*; *see also Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014) (a party opposing arbitration bears the burden to raise an affirmative defense to the agreement's enforcement). Failing that proof, a party may be compelled to participate in arbitration. *Olshan*, 328 S.W.3d at 894–97 (overturning the denial of a motion to compel arbitration because the party seeking to avoid arbitration "provided no comparison of [the costs of arbitration] to the expected cost of litigation, the amount of their claim, or their ability to pay these costs").

Dixie made no attempt to comply with *Olshan*'s requirements. Dixie never claimed that the parties' arbitration agreements were unconscionable, nor did it otherwise challenge their enforceability.

29

Rather, Dixie initially agreed to and participated in the Arbitration Proceeding. CR.13–14; CR.35–39 (February 17, 2016 Report of Preparatory Conference and Scheduling Order signed by EdR and Dixie's counsels). In fact, Dixie filed a breach-of-contract counterclaim in the Arbitration Proceeding based on the contracts containing the initial arbitration agreements. CR.215–20. Dixie offered no evidence to support its claim that the cost of arbitration would be excessive, but merely announced through counsel that it would no longer participate due to its alleged inability to pay, and abandoned the proceedings, limiting its role to "that of an observer." CR.13; CR.237.

Having failed entirely to document with evidence its claim that the cost of the agreed-to arbitration was excessive, Dixie cannot now avoid the effect of its agreement to arbitrate by offering unsubstantiated claims of excessive costs. *Bonded Builders Home Warranty Assoc., Inc. v. Smith*, 488 S.W.3d 468, 482 (Tex. App.—Dallas 2016, no pet).[8] Dixie's due-

8. Moreover, Dixie's appellate briefing of its Issue 3 concerning its alleged inability to pay fails to comply with Texas Rule of Appellate Procedure 38.1(i). Dixie cites to one page from the appellate record: its letter to the Arbitration Panel stating that it would no longer participate in the proceedings due to cost. Appellants' Br. at 14. And it cites one decision from this Court for the principle that Dixie could not represent itself in the arbitration under Texas law. *Id.* at 14–15. Dixie makes no attempt to brief its purported entitlement to vacatur of the Arbitration Panel's award for its alleged inability to pay in the absence of the evidence required by *Olshan*. The Court should,

process claim based on its alleged and unproven inability to pay fails as a matter of law.

## B. The ICDR Procedures Specifically Authorized the Arbitration Panel To Reject Dixie's Counterclaims for Failure To Pay Its Share of the Arbitration Fees.

In any event, Dixie cannot be heard to complain about its inability to present its counterclaims in arbitration due to its alleged financial problems. Dixie agreed to the rules of the arbitral forum, which unequivocally state that "[f]ailure of a party asserting a claim or counterclaim to pay the required deposits shall be deemed a withdrawal of the claim or counterclaim." ICDR art. 36.4.

In the absence of any supporting evidence to substantiate its claim that participation in the arbitration would violate its due process, Dixie must held to its bargain with EdR. Dixie agreed to the rules of the forum that required payment of arbitration fees to present counterclaims and other claims for relief. *See* CR.12 (noting the parties agreed the Arbitration Proceeding would "be governed by the ICDR Procedures.").

---

therefore, refuse to consider Dixie's Issue 3. Tex. R. App. P. 38.1(i); *BDO Seidman LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 859 n.4 (Tex. App.—Dallas 2010, no pet.) (rejecting argument that an arbitration provision violated due process for failure to provide authority as required by Rule 38.1(i)).

The Court should affirm the district court's judgment confirming the Arbitration Award.

**PRAYER**

For these reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

/s/ Breck Harrison
Breck Harrison
  State Bar No. 24007325
Michael Roberts
  State Bar No. 24082153
Danica L. Milios
  State Bar No. 00791261
JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701
[Tel.] (512) 236-2000
[Fax] (512) 236-2002
*bharrison@jw.com*

COUNSEL FOR APPELLEE

## CERTIFICATE OF SERVICE

I certify that on December 13, 2017, a true and correct copy of the foregoing document was served via FileTime e-filing system, certified U.S. mail, return receipt requested, and/or third-party commercial carrier on the following:

Kevin J. Terrazas
Timothy A. Cleveland
CLEVELAND | TERRAZAS PLLC
4611 Bee Cave Rd., # 306B
Austin, Texas  78746

COUNSEL FOR APPELLANT

/s/ Breck Harrison
Breck Harrison

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i) because it contains 6,464 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ Breck Harrison
Breck Harrison